IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JASON JOZWIAK, an individual, on behalf of himself and others similarly situated,<br>　　　　Plaintiff,<br><br>　　vs.<br>CUYAHOGA COUNTY<br>　　　　Defendant. | CASE NO.  1:17-CV-1238<br><br>JUDGE DAN AARON POLSTER<br><br><u>JOINT MOTION FOR APPROVAL OF SETTLEMENT AND STIPULATION OF DISMISSAL WITH PREJUDICE</u> |

**I.　INTRODUCTION**

Representative Plaintiff Jason Jozwiak ("Plaintiff"), on behalf of himself and the similarly situated individuals who opted into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and Defendant Cuyahoga County ("Defendant") respectfully move this Court to approve the proposed FLSA opt-in Settlement reached by the Parties and memorialized in the Joint Stipulation of Settlement and Release ("Settlement" or "Agreement") attached as Exhibit A.

The proposed settlement will resolve bona fide disputes involving overtime compensation claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*  Plaintiff asserted that Defendant unlawfully failed to pay overtime compensation to Plaintiff and other Corrections Officers.  *See* Plaintiff's Collective Action Complaint (ECF # 1).  Defendant denied those claims, and protracted and costly litigation threatened to ensue.

In an effort to avoid the costs and uncertainties of protracted litigation, the Parties entered into a Joint Stipulation of Conditional Certification and Notice to Putative Plaintiffs (ECF # 75) (filed April 10, 2018).  The Stipulation provided for conditional certification of the case as a collective action under the FLSA, 29 U.S.C. § 216(b) and notice to the putative plaintiffs. Following the notice period, an informal exchange of documents and information between the Parties ensued enabling the Parties to conduct due diligence regarding the claims and issues.

Thereafter, the Parties mediated this matter with a professional mediator. The mediation was held on December 14, 2018 with Mediator Susan Grody Ruben.

The proposed settlement constitutes a global resolution of the dispute in which substantial settlement payments will be made available to all Class Members. The Class Members will receive an average payment equal to approximately $399.84, which represents over 18 hours of pay at the highest contractual rate for 2018. Because the proposed Settlement is an FLSA *opt-in* settlement, as opposed to a Rule 23 *opt-out* settlement that would bind absent class members, no fairness hearing is required or requested by the Parties.[1]

The Parties respectfully submit that the proposed Settlement is fair and reasonable, and satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel with the assistance of Mediator Grody Ruben. If approved by the Court, the Settlement will make substantial settlement payments available to the Class Members who elected to participate in the Settlement.

The settlement documents submitted for approval or entry by the Court consist of the following:

**Exhibit A**: Joint Stipulation of Settlement and Release

**Exhibit B**: General Settlement and Release Agreement

**Exhibit C**: Order of Dismissal and Approval of Settlement

---

[1] *See Moore v. Ackerman Inv. Co.*, C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)"); *McLean v. HSM Elec. Prot. Services, Inc.*, 607CV1680ORL28DAB, 2008 WL 4642270 (M.D. Fla. Oct. 8, 2008) (same); *Barnes v. Benzerenterprises, Inc.*, 607CV1754-ORL-22DAB, 2008 WL 4059839, (M.D. Fla. Aug. 27, 2008) ("the Court determines that there is no need for a fairness hearing").

**Exhibit D**: Declaration of Plaintiff's Counsel Hans A. Nilges

The following sections explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Action

On June 13, 2017, Representative Plaintiff Jason Jozwiak filed this Action as a collective action under the FLSA, 29 U.S.C. §§ 201, *et seq.*, and alleged that Defendant failed to pay Corrections Officers overtime compensation for all of the hours they worked over forty (40) each workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 (the "Action").[2] On July 11, 2017, Defendant filed an answer to the Complaint disputing the material allegations both as to fact and law and denying any liability to Representative Plaintiff or any other Corrections Officers, and asserting several affirmative defenses.[3]

### B. Negotiation of The Settlement

Between September 2018 and December 2018 the Parties engaged in an informal yet comprehensive exchange of information regarding Plaintiff's claims and Defendant's defenses to such claims. This included the calculations of Plaintiff's, and a sampling of the Opt-In Party Plaintiffs' alleged overtime damages.

On December 14, 2018, the Parties attended a mediation with Susan Grody Ruben. Subsequently, the Parties reached an agreement to settle the Action on the terms set forth in the Settlement. The parties reached the proposed settlement in this matter after extensive good faith bargaining.

---

[2] ECF No. 1.
[3] ECF No. 20.

### C. The Settlement Terms

If approved by the Court, the Settlement will cover Representative Plaintiff and the 456[4] Opt-In Party Plaintiffs identified in **Appendix 1** of the Settlement ("Settlement Class" or "Class Members").

The Total Settlement Amount is Two Hundred Ninety Thousand Dollars ($290,000.00), which sum will cover: (a) all of the Individual Payments to the Settlement Class; (b) Representative Plaintiff's Class Representative Payment; and (c) Plaintiff's Counsel's attorneys' fees and expenses.

One Hundred Eighty Two Thousand Three Hundred Twenty Nine Dollars Twenty Three Cents ($182,329.23) of the Total Settlement Amount will be divided into Individual Payments to the Settlement Class. The Individual Payments were calculated by Plaintiff's Counsel by assigning a pro-rata share to each Settlement Class member based on the number of weeks worked within the Calculation Period. The Individual Payments are provided in Appendix 1 of the Settlement Agreement.

Seven Thousand Five Hundred Dollars ($7,500.00) of the Total Settlement Amount will be paid to Representative Plaintiff as a Class Representative Payment, in addition to his Individual Payment, in exchange for signing a general release of all claims. In addition, $100,170.77 of the Total Settlement Amount will be paid to Plaintiff's Counsel for attorneys' fees and expenses ($94,166.67 in fees and $6,004.10 in expenses) incurred in the Action.

In exchange, the Action will be dismissed with prejudice, and the Settlement Class will release Defendant from federal and state wage-and-hour claims, rights, demands, liabilities and

---

[4] 460 people opted-in to the lawsuit, but four were not Corrections Officers during the Calculation Period, and therefore do not meet the certified class definition and are therefore excluded from the Settlement Class. These people are Brian Williams (ECF No. 74), Thomas Kanzig (ECF No. 61), Tanya Cleveland (ECF No. 99), and Pamela Coleman (ECF No. 3).Dismissal as to these individuals is without prejudice.

causes of action asserted in Plaintiff's Complaint, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses, pursuant to the Fair Labor Standards Act, and any applicable state wage statute, including but not limited to the Ohio Minimum Fair Wage Standards Act.

### III. THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As shown in the attached Declaration of Hans A. Nilges, and as explained below, Court approval is warranted on all scores.

#### A. The Seven-Factor Standard Is Satisfied.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 16(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3.  As shown below and in the Nilges Declaration (*see* Exhibit D), the standard supports approval of the Settlement.

          1)  **No Indicia of Fraud or Collusion Exists.**

The Parties' counsel each have extensive experience litigating FLSA claims, including claims for unpaid hours worked.  A Settlement Agreement was achieved only after arms-length and good faith negotiations between the Parties, and before a mediator.  As such, there is no indicia of fraud or collusion.

          2)  **The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval.**

The policy favoring the settlement of collective actions and other complex cases applies with particular force here.  Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.  Moreover, the Parties continue to disagree over the merits of Plaintiff's claims.  Plaintiff alleged that he, and others similarly situated, were not compensated for all overtime hours worked.  Defendant maintains that the wage payments Plaintiff and the Class received compensated them for all hours worked, including all overtime hours.  In addition, the Parties disagreed whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applied.

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and potentially protracted litigation.  The Settlement, on the other hand, provides substantial relief to Representative Plaintiff and the Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution.

6

### 3) Investigation Was Sufficient to Allow the Parties to Act Intelligently.

The Parties engaged in substantial investigation prior to negotiating the Settlement. Prior to filing the Action, Plaintiff's Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate complaint for the Court and Defendant. After filing the Action, relevant information was exchanged, including a complete analysis of a sampling of the Class Members' alleged overtime damages. In addition, Plaintiff's Counsel engaged in a further independent investigation of the facts, obtained investigation notes from Representative Plaintiff and numerous other employees who are members of the Settlement Class. Thus, the legal issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides.

### 4) The Risks of Litigation Favor Approval.

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises affirmative defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all.

### 5) Uncertainty of Recovery Supports Approval.

Plaintiff's range of possible recovery is also open to dispute. Even if Plaintiff succeeded on the merits of his claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.

### 6) Experienced Counsels' Views Favor Approval.

The Parties' counsel are experienced in wage-and-hour collective and class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement. Counsel support the Settlement as fair and reasonable, and in the best interest of the Class Members as a whole, as described in the Nilges Declaration (*see* Exhibit D).

### B. The Settlement Distributions Are Fair, Reasonable and Adequate.

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Representative Plaintiff and the Class Members.

#### 1) The Individual Payments Are Reasonable and Adequate.

All Individual Payments were calculated based on the number of weeks each Class Member worked during the Calculation Period. The Calculation Period for Plaintiff and the Class shall mean the period beginning three years prior to the filing of this Action to the date this Proposed Settlement is approved by the Court.

If approved by the Court, the Proposed Settlement will provide substantial payments to the Class Members for alleged unpaid overtime compensation. Each Class Member who participates in the Settlement will receive an average payment equal to approximately $399.84, which represents over 18 hours of pay at the highest contractual rate for 2018. Accordingly, the settlement proceeds are fair, reasonable and adequate.

#### 2) Representative Plaintiff's Service Award Is Proper and Reasonable.

Service awards to a representative plaintiff recognizing the value of his or her services on behalf of other participants are proper. As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

8

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

The courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, the Nilges Declaration (*see* Exhibit D) establishes that the proposed Service Award is proper and reasonable. Representative Plaintiff Jason Jozwiak's services were extensive and effective. In addition to filing the collective action, he provided extensive factual information to Plaintiff's Counsel, faithfully attended meetings with Plaintiff's Counsel, and attended the mediation conference. Moreover, he subjected himself to the responsibilities of serving as a named plaintiff in a lawsuit against his employer.

9

### 3) The Attorneys Fees and Expenses to Plaintiff's Counsel Are Proper and Reasonable.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).

In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

*Fegley* was followed in *Bessey v. Packerland Plainwell, Inc*. 2007 WL 3173972 (W.D. Mich. 2007), in which the district court approved a one-third attorneys' fee in an FLSA settlement very much like the one presented here. Fulfilling *Fegley*'s emphasis on "encourage[ing] the vindication of congressionally identified policies and rights," the *Bessey* court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel. The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible." *Bessey*, 2007 WL 3173972, at *4 (citing *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved"). *Accord, In re*

10

*Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993) ("'[t]he percentage of the fund approach… provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured'").

In determining the reasonableness of the one-third fee, the *Bessey* court considered the comparative data about Rule 23 class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm. The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study"). <u>This data indicates that regardless of size, attorneys' fees average approximately 32% of the settlement</u>.

*Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12) (emphasis added).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average fee to class counsel was approximately one-third of the settlement, while the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement in the present case is exemplary. Therefore, the attorneys' fees requested are reasonable in light of the exceptional benefit achieved for Plaintiff and the Class.

The attorneys' fees requested by Plaintiff's Counsel should not be altered because counsel efficiently resolved this case early on rather than prolonging the litigation and increasing their potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121.

Had this case not settled, Plaintiff's Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendant could have succeeded. Therefore, the Class Members were at great risk for non-payment. This risk of non-payment strongly supports the amount requested here and warrants approval.

Expenses are estimated to be approximately $6,004.10. All expenses were incurred during the course of the litigation of this Action or will be incurred during the administration of the Settlement.

## IV. CONCLUSION

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement by entering the proposed Order of Dismissal and Approval of Settlement attached as Exhibit C.

Respectfully submitted,

| | |
|---|---|
| /s/ Hans A. Nilges<br>Hans A. Nilges (0076017)<br>Shannon M. Draher (0074304)<br>Nilges Draher, LLC<br>7266 Portage Street, N.W.<br>Suite D<br>Massillon, OH  44646<br>Telephone:  330.470.4428<br>Facsimile:  330.754.1430<br>E-Mail:  sdraher@ohlaborlaw.com<br>            hans@ohlaborlaw.com<br><br>*Counsel for Plaintiff* | /s/ Michele L. Jakubs<br>Stephen S. Zashin (0064557)<br>Michele L. Jakubs (0071037)<br>Zashin & Rich Co., L.P.A.<br>950 Main Avenue<br>4th Floor<br>Cleveland, OH 44113<br>Telephone:  216.696.4441<br>Facsimile:  216.696.1618<br>E-Mail:  ssz@zrlaw.com<br>            mlj@zrlaw.com<br><br>and<br><br>Cuyahoga County Department of Law<br>Greg Huth (0062028)<br>Director of Law<br><br>/s/ Jerad J. Zibritosky<br>Jerad J. Zibritosky (0084900)<br>Asst. Law Director<br>Cuyahoga County Department of Law<br>2079 East 9th Street<br>Cleveland, OH 44115<br>Telephone:  216.698.3043<br>Facsimile:  216.698.2744<br>Email:  JZibritosky@CuyahogaCounty.US<br><br>[Representation pursuant to August 27, 2013 Agreement governing the division of duties between the Cuyahoga County Prosecutor's Office and Law Department]<br><br>*Counsel for Defendant* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 24, 2019 a copy of the foregoing was served by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ *Hans A. Nilges*
*Counsel for Plaintiff*